May it please the Court, my name is Elisa Pandolfi and I'm pro bono counsel for the petitioner Marcos Antonio Lomeli. As the issues in this case have been well-briefed by both parties, I do not intend to address the Convention Against Torture today, and instead will rely on our briefs unless this Court has any questions. The Ninth Circuit has indicated that estoppel against the government is subject to heightened requirements compared to estoppel versus traditional private litigants. This is a case, however, in which those heightened requirements are met. The undisputed... Are you talking about estoppel from removal or estoppel to establish citizenship? Your Honor, what we are requesting is that this Court estop the government from denying that Ms. Lomeli, Raquel Lomeli, Mr. Lomeli's mother, met the physical presence requirements to transmit derivative citizenship. So you're talking about estoppel to establish citizenship? Your Honor, that would be the end result. The undisputed facts of this case are that Mr. Lomeli's mother, Raquel Lomeli, was a United States citizen, and but for the dispute surrounding the length of her physical presence in the United States, Mr. Lomeli would be found to have met the requirements for derivative citizenship. So the District Court held otherwise, correct? Yes, Your Honor. So the District Court looked at the evidence that was presented, and based on that evidence, the mother did not meet those requirements. Yes, Your Honor, that was the finding of the District Court. So unless the District Court was wrong, why isn't that just the answer, since the Supreme Court has said estoppel isn't effective to change someone's citizenship status? Two responses, Your Honor. First is that our estoppel claim precedes the factual record that was found in the District Court. The force of our argument is that the record before the District Court was incomplete because of the loss of this critical testimony. And to the second point, which goes to the government's contention that estoppel cannot be applied in this case in which derivative citizenship is alleged, the case that Your Honor is referring to, I believe, is Pangilinan v. the INS. I'm glad you said it, because I can never pronounce it. Well, Pangilinan is a case that dealt with naturalization, and what the Supreme Court held in that case is that naturalization is the exclusive province of Congress, and therefore federal courts are required to strictly enforce the requirements of naturalization. That case, however, did not deal with a case such as this in which derivative citizenship is alleged, which is a fundamentally different concept because derivative citizenship is acquired at birth. Naturalization by definition happens after birth. The Second Circuit in Lake v. Reno applied this fundamental distinction and explicitly rejected the concept that Pangilinan applied in a case in which derivative citizenship was alleged. Lake v. Reno is a case that was vacated by the Supreme Court regarding its finding that there was an equal protection violation in terms of how... Ms. Pandolfi, may I interrupt you just for a second? Let's get to the first point. The record was incomplete because the mother was not interviewed after her 2007 affidavit, which was favorable to your client. Yes, Your Honor. Upon discovery of the 1968 affidavit, which was unfavorable to your client, your position is that the government should have gone out and asked the mother, well, which of your statements is correct, and straightened out any inconvenient facts, right? What proof do you have that such a conversation would have resulted in establishing the 2007 affidavit in your favor and not hammering down the 1968 affidavit against you? Have you proffered any evidence that the mother indeed lived where she said she lived in 2007 by utility bills, employers' records, other witnesses, anything of that sort? There is some evidence that Mr. Lomeli offered in the record, and those take the form of two affidavits by Ms. Lomeli's cousin, Mary Navarro, and also a neighbor, Mr. Gamboa, who between the two affidavits established that she was present in the United States for nearly 25 years prior to Mr. Lomeli's birth. In addition to that, Mr. Lomeli did offer some census records and social security records, but because of the nature of the work that Ms. Lomeli performed in the United States, which was working out in the fields, those records are incomplete and do not by themselves establish that she was here for the requisite amount of time. Was that evidence before the IJ when he took a look at the 1968 affidavit? Yes, Your Honor. So in other words, what he said was, if the mother herself in 1968, before everybody gets ginned up for the lawsuit, says that she didn't live here for the 10 years, 5 of which have to be after the age of 18, that's all I need to know, because that would impeach and contradict everything that was produced subsequently at the IJ's hearing. The problem, Your Honor, was that... Does that not constitute substantial evidence? That is substantial evidence, Your Honor. However, the fact is that the 2007 affidavit was simply ignored by the immigration judge and found not credible on the sole basis that the 1968 affidavit was closer in time. It's not the sole basis, was it? The other basis was that she didn't speak English and the affidavit was in English. We had no evidence as to what she had actually said, because that cannot have been an affidavit in her own hand, right? Isn't that correct? That is correct, Your Honor, but the 1968 affidavit suffers from similar problems with reliability. The affidavit was typed in English. We have no verification that in 1968, Ms. Lomeli was ever able to review that affidavit and that those were her words as well. The district court was also concerned that Mr. Lomeli had testified that he had put together the later 2007 affidavit himself based on his own memory. And the district court thought the 1968 affidavit and further back in time closer to the actual events was more reliable. Doesn't that substantiate the district court's determination, or do you think that's also questionable? Your Honor, we don't dispute that the district court's findings were plausible in light of the record before it. Again, our argument precedes that in that the government failed to interview Ms. Lomeli and that length of delay, the three years coupled with the fact that Ms. Lomeli was known to have had serious health problems, as Mr. Lomeli let the district judge know and the government know in the December 28, 2006 hearing before the immigration judge. And that three-year delay resulted in loss of the government being able to interview Ms. Lomeli and determine their credibility for herself. As Your Honor pointed out, Judge Beyer, there is no proof positive that had Ms. Lomeli been interviewed, that it would be ultimately decided in Mr. Lomeli's favor. But the point is that the government failed to do so and they should not be allowed to now argue that the later statements are incredible when they failed to investigate the basis of those statements. This court has... Are you saying that that's affirmative misconduct on the part of the government? Can you address that point as an element of the estoppel? Yes, Your Honor. The first element in an estoppel claim versus the government is that the government has to engage in affirmative misconduct. And there are two instances here. The instance that we've been discussing is the government's delay in interviewing Ms. Lomeli. And this court has held in you versus the INS that delay can constitute affirmative misconduct. And this court has similarly held so in Vienna versus INS. While those cases have been limited to a certain extent by this court's holding in Jaw versus INS... You said those cases were no longer good law, right, in light of Miranda? Your Honor, this court held that to the extent that those cases state that mere delay rises to the level of affirmative misconduct, that those cases are overruled. However, this court has continued to apply you and Vienna in subsequent cases, subsequent to Jaw, when considering whether the government has engaged in affirmative misconduct. This court has never said that delay cannot be considered when considering affirmative misconduct. And in fact, in this court, in Morgan versus Gonzalez, which is a 2007 case, this court itself can constitute affirmative misconduct. What this court did in Morgan was to consider the test set forth in you and determine that in that case, the conduct did not rise to that level. Here, however, the nearly three-year delay in interviewing Ms. Lomeli, coupled with the fact that the government knew of her poor health, does rise to that level. The government in 2009 did attempt to interview Ms. Lomeli, which indicates that they did see some value in that. Unfortunately, by then, Ms. Lomeli's health had declined and she was not able to attend that interview, and she passed away before the government was ever able to obtain that interview. Turning to the second instance of affirmative misconduct in this case, the government's unjustifiable reversal of Agent Gonzalez's determination that Ms. Lomeli was a derivative United States citizen, two years after that determination was made. What kind of determination did Gonzalez make? Did he have the records in front of him? Your Honor... This is the guy going to the prison, right? This is not a hearing. Did he have the full file in front of him? Your Honor, Mr. Gonzalez's detainer summary is contained on page 540 of the administrative record, and it's not clear what records were before Mr. Gonzalez. Agent Gonzalez did say, find that Mr. Lomeli had provided sufficient evidence of his derivative citizenship, and I believe that Mr. Lomeli testified that what he had before him were the previous unemployment decisions, finding that he was a derivative citizenship. Those decisions didn't show any evidence that the California ALJs knew what was in the file? Yes, Your Honor, but to answer to your question about what it was that Agent Gonzalez did review, he did review the 92-94 unemployment decisions where Ms. Lomeli did testify and was found credible in the 94 hearing, and also Ms. Lomeli's birth certificate. So those were the items that were before Agent Gonzalez, and he determined that Mr. Lomeli was a United States derivative citizen. So the affirmative misconduct is the government ignoring Gonzalez, or it's Gonzalez's own findings? The affirmative misconduct is the government changing its position with respect to Mr. Lomeli. Mr. Lomeli went forth... Wait a minute. Wait a minute. The government wasn't bound by Mr. Gonzalez's finding. He is employed by ICE, right? Yes, sir. The only person's, the only government agency which can determine citizenship is CIS, not ICE. Correct? Yes, Your Honor. That is correct. Based on... Agent Gonzalez's finding is in no way binding under any principles of agency on the government, correct? Not exactly, Your Honor. Agent Gonzalez's finding that Mr. Lomeli was a derivative citizen was actually him performing the function that he had. The prison therefore released Mr. Lomeli without an immigration detainer based on that finding, which was the basis of Mr. Lomeli believing that his citizenship case, which he had been finally been settled. And the government's... I don't understand that. He had... There were several applications filed for him and they were all denied. He had no issuance from any government agency stating he was a citizen. All he got was not being detained, which I guess is a benefit, but it's not the same as being identified as a citizen. Yes, Your Honor. Well, the two prior to his... Prior to his release from prison, there had been two applications, the 1968 application, which his mother had filed on his behalf, and the 1991 application, which was denied essentially based on the 1968 application. Mr. Lomeli did not know what was in that 1968 application. He did not know about that previous file. He believed that he was a United States citizen and he believed that after all this time that his citizenship was finally actually settled. And on Agent Gonzalez's suggestion, he went to CIS to apply again for an N-600 certificate of citizenship, which was ultimately denied. And he was instantly put in removal proceedings. Your Honor, I would like to reserve the balance of my time for rebuttal. Okay. You may do so. Thank you. Good morning. May it please the Court, Yamila Tavila on behalf of the Respondent, the Attorney General. The District Court determined Petitioner is not a United States citizen. Petitioner does not allege any clear errors in the District Court's determination, and this Court is without jurisdiction to grant citizenship inequity. Accordingly, the petition for review should be denied. As an initial matter, I wanted to clarify a little bit of the discussion that just occurred. The 1968 statement is not an affidavit. It is a sworn statement taken at an interview in 1968. And it is completely consistent with Petitioner's mother's application that she filed a few months before that interview. That record of sworn statement says that it was taken in Spanish and translated into English and read back to her. That's all in the record of sworn statement. Accordingly, the immigration judge, the agency relied upon that record of sworn statement in conjunction with the application which Petitioner's mother filed and determined that that evidence that predates the controversy in this case was the most informative on the issue of whether Petitioner is a United States citizen. The District Court agreed Petitioner doesn't allege any clear errors, and this Court is without jurisdiction to grant citizenship inequity. Now, opposing counsel says under Lake v. Reno, the Pangellinan case doesn't apply to derivative citizenship. Can you address that? Your Honor, Lake has been vacated, so that's not binding even in the court that issued it. So that's just not relevant authority for this court to consider. Further, it's important to note that there are only two ways to be a United States citizen, either birth in the United States or naturalization. And that's in Miller v. Albright. That is, whether it's derivation of citizenship or acquisition of citizenship, those are all naturalization, forms of naturalization that exist because Congress has created statutes for naturalizing people who otherwise would not be United States citizens. So that distinction that Petitioner asserts is just not relevant. And no other area of the law is Congress's power more plenary than in drafting statutes on the immigration statutes and the naturalization statutes. And here, Petitioner does not meet the elements of the authorizing statute in place at the time of his birth, nor does he allege that the District Court made any clear errors in determining that he's not a U.S. citizen. Further, the District Court determined that he's not credible. Accordingly, the agency's determination should be affirmed. Are we looking at the District Court's record for clear error now that Mundaka Vega has been taken en banc? Are we back in the limb world where we're looking at it de novo, and if so, how should we review it? Your Honor, the District Court's determinations of fact are reviewed for clear error. Mundaka Vega has been taken en banc to determine what the burden of proof is for the parties before the District Court. That's not an issue here. Petitioner hasn't alleged that they were held to an incorrect standard or that their government was held to an incorrect standard before the District Court. Mundaka Vega, as well as other cases such as Sanchez-Martinez, do still stand for the proposition that the determinations of fact of the District Court judge are reviewed for clear error. And that's consistent with other civil litigation, Your Honor. Mundaka Vega, the only question there is the standard of review before the District Court and not the standard of review for our review of the District Court? Your Honor, the question of Mundaka Vega, the reason that it's been taken en banc is to determine what the parties' burden of proof is before the District Court. Is it by a preponderance of the evidence? Who bears the initial burden of proof?  Petitioner cannot establish a claim of estoppel against the government even if it did apply and it does not in citizenship claims because there is no affirmative misconduct here. At best, we have a negligent act by an ICE agent who is not authorized to grant citizenship. At best, Petitioner lost the ability to be detained longer than he has been and that's not a right that he's challenging that he should have been given. Are you conceding that Gonzales was negligent? Your Honor, it is not our position that Gonzales was negligent because Gonzales simply was there to determine whether Petitioner should continue to be detained. Petitioner made different allegations to Mr. Gonzales. Did the Petitioner tell Gonzales he'd been turned down twice before? He did not and Petitioner concedes as much. In fact, that said, in the AR at 1206, 1174, and 540, all those different sites indicate that Petitioner did not tell Mr. Gonzales. So I take it your answer to my question is no, the government does not concede that Gonzales was negligent, correct? Correct, Your Honor. We do not concede that Gonzales was negligent and again, even if he was negligent, that would not be affirmative misconduct. How about the delay in getting the third affidavit from the mother? Your Honor, Petitioner's mother, she made a sworn statement in 1968. She provided other documentation after Petitioner's second N-600 was denied. Petitioner doesn't have a right to have his mother interviewed until she tells the story that he would like her to tell. The government was proactive in obtaining her testimony in 1968 before the controversy arose in this case and they did take steps to try to obtain her another interview with her later. Petitioner was asked by the immigration judge if he was going to have his mother testify and he stated that she was in poor health. That is not affirmative misconduct on the part of the government. The problem is that we do have some conflict in the evidence. That is, there is some evidence in the record that she has testified inconsistently because we do have an affidavit from her. It has some problems because it's in English. We don't know how it's been translated. But at that point, whose responsibility is it to go and try and reconcile those two affidavits? Petitioner bears the burden of proof of establishing that. Okay, so what should he have done? Your Honor, Petitioner, if he could not provide his mother's testimony again in the immigration court, he could have submitted affidavits, which he did, which were considered by the agency. They were just found to be less probative than the documentation that preexisted. The IJ says, okay, look, we've got this affidavit. The government is protesting it. He says she's not in good health. Who has to do what in order to reconcile the problems there? What should he have done that would have satisfied the government? It seems easy to me that CIS goes in and talks to her again. That's one fix. It seems like a good fix. You may not have an obligation to do so, but it seems like a way of sort of solving the problem. And short of that, short of obtaining CIS's cooperation, what else would have satisfied, short of that, would have satisfied the government? Was Mr. Lomelli responsible for videotaping her, and would that have satisfied the government? Could he conduct a one-sided deposition? Would that have satisfied the government? What has to happen here? Your Honor, there is conflicting evidence in the record. However, the agency properly relied on the evidence that preexisted the controversy. And if petitioner bears the burden of proof. It seems like a good thing to do if she's not available. But she was available in some way, just not in ways that were convenient to everybody. But she was still available, at least for a while. And then now she's not available, and if she's not available, then it seems like, well, we would just go on what was the earliest and most reliable affidavit. That doesn't seem quite fair when the government had the means to go and talk to her. Your Honor, the NTA was issued in 2006, and petitioner indicated at least since 2009 that she was in poor health. That does not establish affirmative misconduct on the part of the government. The government has interviewed Ms. Novelli in 1968, and her testimony in 1968 was completely consistent with her application submitted in 1968, indicating that the aggregate period of time she spent in the U.S. before his birth was less than two years. That's not even close to what he needed to establish in order to acquire United States citizenship through his mother. The district court judges agreed with that determination, reviewing everything de novo, and has found petitioner not even credible. The petitioner didn't have the right to have his mother interviewed over and over again until she told the story that he would like her to tell. In conclusion, the court should deny the petition for review. Thank you. Thank you. Ms. Pandolfi, you have some time reserved. Thank you, Your Honor. Regarding the issue of the burden of proof to establish citizenship, this Court held in Ayala-Villanueva v. Holder that proof of foreign birth does create a presumption of alienage. However, if the person seeking to establish his or her citizenship comes forth with substantial evidence of their citizenship, then this burden shifts back to DHS to prove by clear and convincing evidence that the person is, in fact, an alien. The government contends over and over that they had no duty to interview Ms. Lomelli. However, that is just not the case. There was conflicting evidence in this case, and Mr. Lomelli did everything he could to provide the evidence in the form of the 2007 affidavit. The government is incorrect that Mr. Lomelli could have had Raquel Lomelli testify before the immigration judge because the immigration judge had no authority to hear Mr. Lomelli's citizenship claim, which is why, as can be found on page 133 of the administrative record, the IJ tells the government that they have to interview Ms. Lomelli to clarify these previous inconsistent statements. Thank you, Your Honors. Thank you, Counsel, for the argument. Lomelli v. Holder is submitted, and Ms. Pandolfi, the Court recognizes that you are representing him pro bono and thanks you very much for your service.
judges: Bybee, Bea, Ikuta